Nancy DUNN, Respondent,

v.

HUSSMAN CORPORATION, Appellant,

and

The Treasurer of Missouri Custodian of the Second Injury Fund, Respondent.

Nancy DUNN, Appellant,

v.

HUSSMAN CORPORATION, Respondent,

and

The Treasurer of Missouri Custodian of the Second Injury Fund, Respondent.

Nos. 65433, 65434.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 13, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 1995.

Application to Transfer Denied March 21, 1995.

Robert Henry Pedroli, St. Louis, for respondent Dunn.

Karen A. Mulroy, St. Louis, for appellant Hussmann.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for respondent Second Injury Fund.

WHITE, Judge.

Hussmann Corporation (employer) appeals from a decision by the Labor and Industrial Relations Commission (Commission) awarding its employee, Nancy Dunn (claimant), compensation for injuries she suffered. On appeal, employer contends the Commission erred in finding: (1) claimant permanently and totally disabled solely as a result of the January 6, 1989 injury; and (2) claimant gave employer adequate notice of her injury and employer and insurer were not prejudiced. Claimant cross-appeals from the Commission's decision to vacate its August 24, 1993 Final Award. We reinstate the Commission's initial award of August 24, 1993 against employer and the Second Injury Fund.

Claimant, a forty-four year old woman with an eighth grade education, worked for employer approximately eleven years. She assembled and repaired manufactured goods on an assembly line. On January 3, 1989, claimant started the week working as an electrician on the assembly line, a job she had previously performed infrequently. The task required claimant to use an airgun, wire stripper, wire cutters, screw driver, and crimping tool to make about twenty electrical connections on each unit. Claimant testified this work required her to sit in a cramped position on a low backless stool with her head down for a long period of time and she had to be fast in her work. By January 7, 1989, her shoulder, neck, and right arm were hurting "real bad." Claimant told a co-worker "my neck is killing me. I can't hardly take it." She did not report the pain to her supervisor.

Claimant testified she was in severe pain Friday night and Saturday. On Sunday, claimant's husband took her to the emergency room. According to the hospital records, claimant did not know of any precipitating event which could have caused her pain. The next day, a cervical myelogram was performed. It revealed two ruptured discs in her neck and an anterior cervical fusion was performed.

Claimant testified her condition grew worse following the surgery. Claimant was readmitted into the hospital on January 22, 1989, and underwent further surgery to remove and replace a bone plug which had slipped.

Following the second surgery, claimant continued to complain of pain, numbness, and weakness in her neck, right shoulder, and right arm. Her neck was also visibly distort-

ed and she had difficulty speaking, swallowing, and drinking.

On October 2, 1989, claimant was given a medical release and she returned to work for a period of nine months. However, claimant and her supervisor testified she was never the same after the injury and struggled upon her return to work. Also, an office note from claimant's physician, Dr. Paul J. Sheehan, and other evidence admitted during the hearing indicates the work release was provided at claimant's urging. Claimant was anxious to return to work and assured Dr. Sheehan she could abide by certain work restrictions. Dr. Sheehan recommended claimant have physical therapy and work only four hours a day. Employer, however, refused to allow claimant to return to work unless it was full time and without limitations. Claimant returned to Dr. Sheehan and he subsequently issued a work release. Claimant returned to work, with medication, but immediately thereafter suffered serious physical difficulties.

On October 19, 1989, claimant returned to Dr. Sheehan's office complaining of swelling and pain in her hand and elbows. On February 21, 1990, claimant injured her left hand while performing her job duties. Claimant testified she heard something pop or pull and a "big knot" developed on the top portion of her left wrist. By June 25, 1990, claimant was unable to continue working. A myelogram was performed on June 26, 1990 which indicated a bulging disc in her neck. Dr. Ronald L. Fischer subsequently examined claimant and refused to release her for work. Claimant was examined over the next year by Dr. Fischer and other doctors.

On June 20, 1991, Dr. Fischer concluded claimant would never be able to return to work for employer, nor tolerate a sedentary job because of her upper back and neck pain. He also opined claimant would never be able to tolerate a job which requires repetitive usage of her right arm. On August 25, 1991, Dr. Alex R. Shreim, examined claimant and concluded she was permanently and totally disabled. Dr. Shreim attributed the disability entirely to the injury suffered on January 6, 1989.

Francine Bogar, an employee benefits representative for employer, testified at the hearing. She stated claimant's husband called her on January 9, 1989 to tell her claimant had gone to the hospital with chest pain and request a medical leave form. On January 17, 1989, Ms. Bogar received a benefit request form from claimant stating she was being treated for a herniated cervical disc. Ms. Bogar also testified she sent several benefit request forms to claimant during the next few months following claimant's injury, and each time claimant returned the forms marked "not related to employment." Ms. Bogar did not receive a benefit request form from claimant stating her condition was work related until May 23, 1989. Claimant testified her husband filled out all of the forms prior to May 23, 1989 because claimant was in severe pain and had to relearn how to write following the injury.

Claimant filed two workers' compensation claims, both of which are at issue in this appeal. Claim number 88–177845 arose out of the initial injury on January 6, 1989 and was filed against employer and insurer. Claim number 90–021490 related to the subsequent injury on February 23, 1990 and was filed against both the employer and the Second Injury Fund. Both claims were consolidated at hearing and during the appeal before the Commission.

The Administrative Law Judge (ALJ) found employer and insurer liable for permanent and partial disability arising out of the January 6, 1989 injury, and the Second Injury Fund liable for permanent and total disability arising out of the February 23, 1990 injury. Employer and insurer appealed the 1989 injury award, and the Second Injury Fund appealed the 1990 injury award.

After listening to oral argument and reviewing the briefs filed by the parties, the Commission upheld the ALJ's decision on August 24, 1993. Employer and insurer filed a petition for "Rehearing of Oral Argument" on September 2, 1993, within the thirty day appeal period as prescribed by § 287.495 RSMo 1986.[1] The Commission granted this request.

---

1. Section 287.495.1 RSMo 1986 provides as follows: "[t]he final award of the [C]ommission

Following a second oral argument, the Commission entered an amended Final Award on December 15, 1993. It found the employer and insurer liable for permanent total disability and lifetime benefits in connection with the 1989 injury. No liability was found against the Second Injury Fund. This appeal followed.

We find claimant's cross-appeal dispositive as to employer's first point on appeal. Accordingly, we address it first.

■ In the cross-appeal, claimant contends the Commission exceeded its authority in granting employer's Motion for Rehearing, and subsequently altering its original award. Claimant asserts the Commission is a creature of statute and, as such, does not have any more authority than what is specifically granted to it by statute. Since there is no provision within the Workers' Compensation Act authorizing the Commission to entertain motions after the final award is issued, claimant argues, it follows the Commission was not authorized to do so.

The Second Injury Fund relies exclusively on *Fisher v. City of Independence,* 370 S.W.2d 310 (Mo. banc 1963). There, a city employee's common law action against the city was dismissed on the city's representation it had qualified as a self-insured employer and, thus, employee's action was subject to the provisions of the Missouri Workmen's Compensation Law. *Id.* at 311–312. The employee then filed a workers' compensation action against the city and subsequently an award was issued in his favor on July 28, 1959. *Id.* at 312. Following the award, the parties learned the city had failed to maintain its status as a self-insurer and, upon motion of the employee, the Commission vacated its award and dismissed employee's claim on August 12, 1959.[2] *Id.* Thus, in *Fisher,* the Commission's decision to reconsider its original award arose out of the discovery that one of the facts it had relied on was plainly erroneous.

The Supreme Court held in *Fisher* the Commission was acting within its authority when it vacated an award within the appeal period and, after reconsideration, issued a final award dismissing the employee's compensation claim. *Fisher,* 370 S.W.2d at 316. The court reasoned the award was not binding until the thirty day appeal period expired. *Id.* The court further reasoned the very nature of the Commission's function in determining the facts on which its jurisdiction rests and liability under the act of the persons before it necessarily implies the Commission has the power and authority to change an award within the appeal period. *Id.* The Second Injury Fund argues no principled distinction exists between the present case and *Fisher* and, therefore, claimant's cross-appeal must be denied. We disagree.

■ We are, of course, bound by the decisions of the Missouri Supreme Court. Mo. Const. art. V, § 2. However, we find this case is distinguishable from *Fisher.* Here, the Commission rescinded its award and granted a rehearing within the thirty day appeal period. However, unlike *Fisher,* the Commission did not issue a new award until December 15, 1993, almost three months after the expiration of the appeal period. Because the appeal period expired prior to the issuance of a new award, this case is not analogous to *Fisher* in which the Commission's decision to vacate its original award, grant a rehearing, and issue a new award all occurred within the appeal period prescribed by statute. We find no statutory authority under the circumstances in the present case which allows the Commission to enter a new award after the appeal period has expired. Moreover, to find otherwise would permit the Commission to vacate orders and grant rehearings in continuum. This would undermine the public's confidence in the important policy of the finality of judgments. The procedures outlined for appeal by statute are

shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court having jurisdiction in the area in which the accident occurred...."

**2.** The date, August 12, 1959, is found in the Court of Appeals' original decision, *Fisher v. City of Independence,* 350 S.W.2d 268, 270 (Mo.App. K.C.D.1961), which was subsequently reversed by the Missouri Supreme Court in *Fisher v. City of Independence,* 370 S.W.2d 310 (Mo. banc 1963).

mandatory. *Knuckles v. Apex Industries, Inc.,* 762 S.W.2d 542, 543 (Mo.App.E.D.1988). Absent the entering of a different order within the thirty day appeal period, the Second Injury Fund must rely on § 287.495 for relief.

In the present case, there also have been no allegations of factual mistake. Instead, employer argued in its petition for rehearing of oral argument a rehearing was necessary because the Commission, in adopting the ALJ's findings, incorrectly decided the issue of notice. In effect, employer was dissatisfied with the original ruling and wanted a "second bite at the apple." The existence of a disputable fact distinguishes this case from *Fisher* in which the Commission's decision to allow rehearing after the final award had been issued and before the appeal period expired was not related to anything other than an undisputed fact. Here, the Commission reviewed the record as a whole and came to the conclusion the ALJ was correct in finding employer had notice of claimant's injury. If employer did not approve of this finding, it should have appealed the award to this court, as mandated by § 287.495.

Employer further argued in its petition, rehearing was necessary because two of the Commission's original three members had been replaced between December 2, 1992, the date of oral argument, and August 24, 1993, the date the original final award was issued. Section 287.480 RSMo 1986 provides:

"If an application for review is made to the [C]ommission within twenty days from the date of the award, the full [C]ommission, if the first hearing was not held before the full [C]ommission, shall review the evidence, or, if considered advisable, as soon as practicable hear the parties at issue . . . ."

By its terms, this statute does not provide for rehearing under the circumstances of this case. Section 287.480 provides for rehearing only when the first hearing was not held before the full Commission. Here, the first hearing was held before the full Commission. The statute does not provide for rehearing when the composition of the Commission changes. If the legislature had intended to provide for rehearing every time the members of the Commission are replaced, it could have enacted such a provision.

■ Section 287.470 RSMo 1986 also did not provide the Commission with the authority to rehear oral argument because employer did not allege and, indeed there is no evidence of, a change in claimant's condition. Section 287.470 is only applicable in those situations where the claimant's original physical condition upon which the final award was predicated has materially improved or grown substantially worse. § 287.470; *Kramer v. Labor & Indus. Rel. Com'n,* 799 S.W.2d 142, 145 (Mo.App.E.D.1990). "A continued incapacity of the same kind and character from the same injury is not a change in condition within the meaning of the statute, and the statute is not intended as a means of correcting an erroneous award." *Blissenbach v. General Motors Assembly Div.,* 650 S.W.2d 8, 11 (Mo.App.E.D.1983). The only change of condition alleged by employer in his petition was the fact two members of the Commission who were present at the first hearing had been replaced by new members prior to the issuance of the August 24, 1993 award. The statute and relevant caselaw does not recognize this as a change of condition such as to justify a change in award. Thus, we find the Commission was without authority to rescind its initial award, grant a rehearing, and then issue a new award after the appeal period expired. The award of August 24, 1993 is reinstated. Claimant's point on cross-appeal is granted.

In view of our holding, employer's point one on appeal, arguing the Commission erred in finding claimant permanently and totally disabled solely as a result of the January 6, 1989 injury, is moot. We next address employer's second point on appeal.

■ Employer contends claimant should be denied an award on her claim for workers' compensation because she failed to give written notice of her injury and employer was thereby prejudiced.[3]

■ Appellate review of a workers' compensation award is governed by § 287.495. The Commission's decision may be set aside

***

3. We note both the Commission's August 24, 1993 award and December 15, 1993 award found employer had adequate notice of claimant's injuries.

only if there is no substantial and competent evidence to support it or if it is clearly contrary to the overwhelming weight of the evidence. *Talley v. Runny Meade Estates, Ltd.,* 831 S.W.2d 692, 693 (Mo.App. E.D. 1992).

Section 287.420 RSMo 1986 requires an employee to give notice of the time, place, and nature of her injury within thirty days after the accident in order to bring a compensation proceeding. The report to the employer is intended to give the employer a timely opportunity to investigate whether an accident occurred and, if it did, to promptly furnish medical attention to the employee to minimize the injury. *Pattengill v. General Motors Corp.,* 820 S.W.2d 112, 113 (Mo.App. E.D.1991).

 The statute excuses the requirement of written notice where the employer is not prejudiced by the failure to receive the notice. *Id.* An employee makes a *prima facie* showing the employer was not prejudiced by the failure to receive timely written notice if she establishes the employer had actual notice of a potentially compensable injury. *Id.* The burden of proving prejudice then shifts to the employer. *Id.* Notice or knowledge is imputed to the employer when it is given to a supervisory employee. *Id.*

In the present case, the Commission found employer had notice of a potentially compensable work related injury. Claimant reported her hospitalization to Francine Bogar, employer's benefit representative, within three days of the date of her accident. Employer's representative then completed the request for personal medical leave, thus, acknowledging claimant's inability to work as a result of her hospitalization. Additionally, by January 17, 1989, employer's representative was notified of the true nature of claimant's injuries, a ruptured cervical disc. The Commission believed these facts constituted constructive knowledge and we do not find otherwise.

It is true, claimant did not report the work related nature of her injury until the middle of May 1989, four months after the injury occurred. However, employer had reasonable notice of claimant's condition and could have, if it had so chosen, investigated the cause of her disability. The Commission not-

ed, "[w]hether the employer's treatment of the promptly reported disability and payment of medical expenses as a non-work-related injury was ingenuous, based upon the employer's desire not to inquire any further into the cause of the injury is left unanswered by the evidence." Thus, the Commission's finding employer had notice of claimant's injury is supported by competent, substantial evidence and is not clearly against the overwhelming weight of the evidence.

Finally, employer has not put forth any evidence or allegations as to how it was prejudiced by claimant's failure to give written notice. We note claimant immediately sought medical attention and employer has not objected to its form, necessity, or reasonableness. Since the employer had some actual notice of a potentially compensable injury and did not demonstrate any prejudice due to a lack of written notice, the notice given by claimant to employer's agent appears sufficient. Point denied.

We vacate the Commission's award of December 15, 1993 and order the award of August 24, 1993 reinstated. We affirm the Commission's finding claimant gave employer adequate notice of her injury.

SMITH, P.J., and KAROHL, J., concur.